USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  7/25/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AMBER MARIE NAVEDO,                                    :
                                                                          :
                                        Plaintiff,            :                **OPINION AND**
                                                                          :                **ORDER**
                    -against-                                  :
                                                                          :                20-CV-10013 (JLC)
KILOLO KIJAKAZI, [1]                                   :
Acting Commissioner of the                         :
Social Security Administration,                     :
                                                                          :
                                        Defendant.         :
------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Amber Marie Navedo seeks judicial review of a final determination by Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits and supplemental security income under the Social Security Act.  The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, the Court grants Navedo's motion, denies the Commissioner's cross-motion, and remands the case for further proceedings.

## I.     BACKGROUND

### A.  Procedural History

On August 21, 2018, Navedo filed a Title II application for Social Security Disability Insurance Benefits ("SSD"), and a Title XVI application for Supplemental

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the defendant in this action.

Social Security Income ("SSI"), alleging disability beginning July 21, 2017. Administrative Record ("AR"), Dkt. No. 13 at 10.[2]  The Social Security Administration ("SSA") denied Navedo's application on October 12, 2018.  *Id.* Navedo then requested a hearing before an Administrative Law Judge ("ALJ") on October 24, 2018.  *Id.*  A video hearing was held on September 3, 2019.  *Id.*[3]  In an 11-page written decision dated November 29, 2019, the ALJ found Navedo not disabled and denied her claim.  *Id.* at 10–21.  On December 3, 2019, Navedo requested review of the ALJ's decision by the Appeals Council.  *Id.* at 166–68.  The Appeals Council denied Navedo's request for review on September 29, 2020, which rendered the ALJ's decision final.  *Id.* at 1–3.

Navedo timely commenced this action on November 30, 2020, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §405(g).  *See* Complaint ("Compl."), Dkt. No. 1.  The Commissioner answered Navedo's complaint by filing the administrative record on July 20, 2021.  Dkt. No. 13.  On October 18, 2021, Navedo moved for judgment on the pleadings and submitted a memorandum of law in support of her motion.  Notice of Motion, Dkt. No. 16; Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem."), Dkt. No. 17.  The Commissioner cross-moved for judgment on the pleadings on March 17,

---

[2] Page numbers refer to the sequential numbering of the Administrative Record provided on the bottom right corner of the page, not the numbers produced by the Electronic Case Filing ("ECF") System.

[3] The ALJ appeared at the hearing via televideo conference, but Navedo and her representative were physically present at the hearing office.  *See* AR at 33.

2022 and submitted a memorandum in support of her motion.  Notice of Cross-Motion, Dkt. No. 23; Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings and in Support of the Commissioner's Cross-Motion for Judgment on the Pleadings ("Def. Mem."), Dkt. No. 24.  On April 13, 2022, Navedo advised the Court that she would not be submitting reply papers.  Dkt. No. 28.

### B. The Hearing Before the ALJ

The hearing was held in Hartford, Connecticut, before ALJ Ryan Alger on September 3, 2019.  AR at 33.  Navedo appeared in person and was represented by Percell Williams, a non-attorney representative.  *Id.*  Vocational Expert ("VE") Dennis King participated by telephone.  *Id.*

At the time of the hearing, Navedo was 26 years old and lived in Manhattan with her five-year-old daughter.  *Id.* at 33, 40–41.  Navedo reported that she had earned her General Educational Development ("GED").  *Id.* at 40.  Navedo testified that her last work experience was as a barista and as a prep cook in a supermarket. *Id.*  Her representative stated that Navedo had been diagnosed with bipolar 2, post-traumatic stress disorder ("PTSD"), panic disorder without agoraphobia, attention deficit hyperactivity disorder, and cannabis abuse.  *Id.* at 35–36.  At the time of the hearing, Navedo attended regular counseling for mental health and had been prescribed Seroquel, which she said that she found "[n]ot [helpful] at the moment because it makes [her] drowsy."  *Id.* at 41–42.[4]

---

[4] Seroquel, or Quetiapine, is a medication used to treat the symptoms of schizophrenia, bipolar disorder, and depression.  *Quetiapine*, U.S. NATIONAL

Navedo testified that her depression is hard to tolerate and "stops [her] from doing a lot of things that [she is] supposed to be doing." *Id.* at 48. She indicated that crying is a symptom of her depression. *Id.* at 48-49. Navedo explained that she gets agitated easily and that she can "go from just a depression of feeling sad . . . to pissed off" and wanting to "punch the wall or something." *Id.* at 49. She testified that these mood swings happen frequently and cause her to isolate at home, where she does not deal with "backlash or anything." *Id.* at 49, 54. Navedo stated that she used to get anxiety attacks every day or every two days, and now has them about once a month. *Id.* at 50. Navedo credited the improvement to taking the medication hydroxyzine but stated that it was not compatible with other medication she was currently taking and that her medication regimen was still in flux. *Id.* at 50–51. With respect to her PTSD, Navedo testified that she deals with flashbacks both while awake and while sleeping. *Id.* at 51. She explained that they occur from one to three times a week and can be triggered by "the smallest little thing," such as seeing something on her phone. *Id.* at 52. Navedo also stated that she suffers from auditory hallucinations. *Id.*

Navedo testified that the aforementioned conditions negatively affect her attention and concentration, preventing her from finishing "projects" like cooking and cleaning and leaving her "all over the place." *Id.* at 53. She explained that she stopped watching television because she "couldn't pay attention to it." *Id.* at 58.

---

LIBRARY OF MEDICINE: MEDLINE PLUS, https://medlineplus.gov/druginfo/meds/a698019.html (last visited July 22, 2022).

She stated that her memory "fluctuates." *Id.* at 53–54. Navedo testified that she cooks one to three or four times a month, and prepares "easy" or microwaveable meals. *Id.* at 55. She stated that she has gone as long as a month or "a little longer" without cleaning. *Id.* Navedo further explained that her neighbor is "the only reason [she is] able to go food shopping" because she will take Navedo with her when she goes. *Id.* at 56. Navedo further testified that the same neighbor helps her with cooking, laundry, food shopping, and watching her daughter. *Id.*

After Navedo's testimony, the ALJ questioned the VE. *Id.* at 60. Specifically, the ALJ inquired about the employability of an individual with Navedo's age, education, and work experience who could work at the medium exertional level but could only carry out and remember simple instructions, handle occasional interaction with co-workers, and could not interact with the general public. *Id.* at 61. The VE testified that such a person could perform the occupations of dishwasher, janitor, or prep cook. *Id.* The ALJ then asked the VE what jobs would be available if he further limited the individual in the first hypothetical to a lack of attention and concentration and being off-task 15 percent or more of the day. *Id.* The VE testified that such limitations would rule out all competitive employment. *Id.* The ALJ then asked the VE what jobs would be available if he limited the individual in the first hypothetical to being absent three days or more per month on a consistent basis. *Id.* at 61–62. The VE again testified that such limitations would rule out all competitive employment. *Id.* at 62.

5

### C. The Medical Evidence

In her motion papers, Navedo has provided a summary of the medical evidence contained in the administrative record. *See* Pl. Mem. at 2–12. In response, the Commissioner has also provided a summary of the medical evidence. *See* Def. Mem. at 3–12. Neither party disputes the summary provided by the other. Having examined the record, the Court adopts the parties' summaries as accurate and complete for purposes of the issues raised in this action. *See, e.g.*, *Platt v. Comm'r*, No. 20-CV-8382 (GWG), 2022 WL 621974, at *2 (S.D.N.Y. Mar. 3, 2022) (adopting parties' summaries of medical evidence). The Court will discuss the medical evidence pertinent to the adjudication of this case in Section II. B below.

### D. The ALJ's Decision

The ALJ denied Navedo's application on November 29, 2019. AR at 21. In so doing, the ALJ concluded that Navedo was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act from July 21, 2017 through November 29, 2019, the date of the decision. *Id.* at 10, 21.

Following the five-step test set forth in the SSA regulations, the ALJ first found that Navedo met the insured status requirements through March 31, 2019 and "has not engaged in substantial gainful activity since July 21, 2017, the alleged onset date." *Id.* at 12. At step two, the ALJ found that Navedo had "the following severe impairments: major depression, anxiety, PTSD, scoliosis, and obesity." *Id.*

At step three, the ALJ found that Navedo "does not have an impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id.* at 13.  In reaching this decision, the ALJ concluded that Navedo has moderate limitations in understanding, remembering, or applying information; interacting with others; the ability to concentrate, persist, or maintain pace; and adapting or managing herself. *Id.* at 13–14.  Because he determined that Navedo's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, he concluded that the paragraph B criteria were not satisfied; he also concluded that the paragraph C criteria were not satisfied.  *Id.* at 14.

Before moving to step four, the ALJ assessed Navedo's residual functional capacity ("RFC").  *See id.* at 13–20.  In doing so, the ALJ determined that Navedo's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 15.  The ALJ concluded that Navedo had the RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [that Navedo] can carry out and remember simple instructions; occasional[ly] interact[ ] with coworkers; and [cannot] interact[ ] with the public." *Id.*  The ALJ provided a report of Navedo's medical records, spanning 2017 through 2019. *Id.* at 16–19.  Finally, the ALJ provided an analysis of which physicians and other treating sources he found persuasive and which he found unpersuasive in reaching his decision.  *Id.*

At step four, the ALJ noted that Navedo had no past relevant work.  *Id.* at 20.  Finally, at step five, considering Navedo's "age, education, work experience, and

residual functional capacity," the ALJ concluded that there are "jobs that exist in significant numbers in the national economy" that Navedo could perform—specifically, the jobs of dishwasher, janitor, and cook. *Id.* at 20–21. Accordingly, the ALJ determined that "a finding of 'not disabled' [was] appropriate." *Id.* at 21.

## II.   DISCUSSION

### A. Legal Standards

#### 1. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). The district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted).  "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'"  *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).  On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . .  for a rehearing."  42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)) (alteration in original).

### 2. Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022). Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "'[T]he ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period . . . following the date of his claim.'" *Love v. Kijakazi*, No. 20-CV-1250 (EK), 2021 WL 5866490, at *5 (E.D.N.Y. Dec. 10, 2021) (quoting *Williams v. Colvin*, No. 15-CV-144 (WMS), 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016)); *see also Milliken v. Saul*, No. 19-CV-9371 (PED), 2021 WL 1030606, at *9 (S.D.N.Y. Mar. 17, 2021) ("A 'closed period' of disability occurs where a claimant is found by the Commissioner to be disabled for a finite period of time which began and ended prior to the date of the agency's administrative determination of disability.").

In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough

inquiry into the claimant's condition and must be mindful that 'the Social Security

Act is a remedial statute, to be broadly construed and liberally applied.'" *Mongeu*r,

722 F.2d at 1037 (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 41

(2d Cir. 1972)).  Specifically, the Commissioner's decision must consider factors such

as: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such

facts; (3) subjective evidence of pain or disability testified to by the claimant or

others; and (4) the claimant's educational background, age, and work

experience."  *Id.* (internal citations omitted).

### a.  Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential

evaluation process' to determine whether a claimant is disabled[.]"  *Estrella v.

Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. §

404.1520(a)(4).  First, the Commissioner must establish whether the claimant is

presently employed.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is unemployed,

the Commissioner goes to the second step and determines whether the claimant has

a "severe" impairment restricting his or her ability to work.  20 C.F.R. §

404.1520(a)(4)(ii).  If the claimant has such an impairment, the Commissioner

moves to the third step and considers whether the medical severity of the

impairment "meets or equals" a listing in Appendix One of Subpart P of the

regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is considered

disabled.  *Id.*; 20 C.F.R. § 404.1520(d).

If the claimant alleges a mental impairment, "the regulations further require that the ALJ 'rate the degree of [the claimant's] functional limitation based on the extent to which [her] impairment(s) interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis.'" *Rosario v. Kijakazi*, No. 20-CV-5490 (JPC) (BCM), 2022 WL 875925, at *11 (S.D.N.Y. Mar. 15, 2022) (quoting 20 C.F.R. § 404.1520a(c)(2)), *adopted by* 2022 WL 976879 (Mar. 31, 2022) (alterations in original). "The degree of functional limitation is rated in 'four broad functional areas,' including the claimant's ability to '[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.'" *Id.* (quoting 20 C.F.R. § 404.1520a(c)(3)). The Commissioner uses a five-point scale to determine the degree of limitation in each area:  None, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). "These ratings are used both at step two, to determine whether a mental impairment is 'severe,' and at step three, to determine whether a severe mental impairment meets or medically equals a listed impairment." *Rosario*, 2022 WL 875925, at *11.

If the claimant's impairment does not meet or equal a listed impairment, then the Commissioner continues to the fourth step and determines whether the claimant has the RFC to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Finally, if the claimant does not have the RFC to perform past relevant work, the Commissioner completes the fifth step and ascertains whether

the claimant possesses the ability to perform any other work.  20 C.F.R. §

404.1520(a)(4)(v).

The claimant has the burden at the first four steps.  *Burgess v. Astrue*, 537

F.3d 117, 128 (2d Cir. 2008).  If the claimant is successful, the burden shifts to the

Commissioner at the fifth and final step, where the Commissioner must establish

that the claimant has the ability to perform some work in the national economy.

*See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b.  Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial."  *Sims*

*v. Apfel*, 530 U.S. 103, 110–11 (2000).  Consequently, "the social security ALJ,

unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop

the record in light of the essentially non-adversarial nature of a benefits

proceeding."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation

marks omitted).  As part of this duty, the ALJ must "investigate the facts and

develop the arguments both for and against granting benefits."  *Sims*, 530 U.S. at

111.  Specifically, under the applicable regulations, the ALJ is required to develop a

claimant's complete medical history.  20 C.F.R. § 404.1512(b); *see also Pratts,* 94 F.

3d at 37.  This responsibility "encompasses not only the duty to obtain a claimant's

medical records and reports but also the duty to question the claimant adequately

about any subjective complaints and the impact of the claimant's impairments on

the claimant's functional capacity."  *Pena v. Astrue*, No. 07-CV-11099 (GWG), 2008

WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (internal citations omitted).

Whether the ALJ has satisfied this duty to develop the record is a threshold question.  Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Hum. Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.") (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)).  The ALJ must develop the record even where the claimant has legal counsel.  *See, e.g., Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Remand is appropriate where this duty is not discharged.  *See, e.g., Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

### c.  Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted).  For SSI and Social Security Disability Insurance applications filed

prior to March 27, 2017, SSA regulations set forth the "treating physician rule,"
which required an ALJ to give more weight to the opinions of physicians with the
most significant clinical relationship with the plaintiff.  20 C.F.R. §§ 404.1527(c)(2);
416.927(d)(2); *see also, e.g.*, *Taylor v. Barnhart*, 117 F. App'x 139, 140 (2d Cir.
2004).  Under the treating physician rule, an ALJ was required to give "good
reasons," 20 C.F.R. § 404.1527(c)(2), if she determined that a treating physician's
opinion was not entitled to "controlling weight," or at least "more weight," than the
opinions of non-treating and non-examining sources.  *Gonzalez v. Apfel*, 113 F.
Supp. 2d 580, 588 (S.D.N.Y. 2000).  In addition, a consultative physician's opinion
was generally entitled to "little weight."  *Giddings v. Astrue*, 333 F. App'x 649, 652
(2d Cir. 2009).

However, in January 2017, the SSA revised its regulations regarding the
evaluation of medical opinion for claims filed on or after March 27, 2017 (such as
Navedo's claim in this case).  *See* REVISIONS TO THE RULES REGARDING THE
EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017).  "In
implementing new regulations, the SSA has apparently sought to move away from a
perceived hierarchy of medical sources."  *Velasquez v. Kijakazi*, No. 19-CV-9303
(DF), 2021 WL 4392986, at *19 (S.D.N.Y. Sep. 24, 2021) (citing 82 Fed. Reg.
5844).  The new regulations state that an ALJ need "not defer or give any specific
evidentiary weight, including controlling weight, to any medical opinion(s) or prior
administrative medical finding(s), including those from [a claimant's] medical
sources."  *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 416.1520c(a)).  "Instead, an ALJ is

to consider all medical opinions in the record and 'evaluate their persuasiveness' based on the following five 'factors': (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any 'other' factor that 'tend[s] to support or contradict a medical opinion.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416 920c(a)–(c)).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)–(b), 416 920c(a)–(b).  Under the new regulations, the ALJ must "explain how he considered" both the supportability and consistency factors, as they are "the most important factors."  20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2); *see also, e.g., Russ v. Comm'r of Soc. Sec.*, No. 20-CV-6389 (RWL), 2022 WL 278657, at *6 (S.D.N.Y. Jan. 31, 2022) ("[t]he new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight," referring to the supportability and consistency factors).  Evaluating "supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)."  *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (KMW) (KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) *adopted by* 2022 WL 717612 (Mar. 10, 2022).  With regard to consistency, "the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes."  *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(3)); *see generally* 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base decision on "all evidence available in [the record]").

In addition, under the new regulations, the ALJ is required to consider, but need not explicitly discuss, the three remaining factors (relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion). *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[W]hen the opinions offered by two or more medical sources about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, the ALJ [should] articulate how he considered the remaining factors in evaluating the opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (internal quotations omitted).

Courts considering the application of the new regulations have concluded that "the factors are very similar to the analysis under the old [treating physician] rule." *Velasquez*, 2021 WL 4392986, at *20 (quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); *see also Acosta Cuevas*, 2021 WL 363682, at *9 (collecting cases) ("the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar"). "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned." *Acosta Cuevas*, 2021 WL 363682, at

*9; *see also e.g., Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) ("consistency and supportability" were foundation of treating physician rule).

The "failure to properly consider and apply" supportability and consistency "is grounds for remand." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021); *see also Rosario v. Comm'r of Soc. Sec.*, No. 20-CV-7749 (SLC), 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022) ("ALJ must explain, in all cases, how [he or she] considered" supportability and consistency) (internal quotations omitted); *Rivera v. Comm'r of Soc. Sec.,* No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020) (remanding so ALJ can "explicitly discuss both the supportability and consistency of the consulting examiners' opinions"), *adopted by* 2021 WL 134945 (Jan. 14, 2021).  "An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)).  However, the Court need not remand the case if the ALJ only committed harmless error*, i.e.*, where the "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### d.  Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court.  *Osorio v. Barnhart*, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006).  "As with any finding of fact, '[i]f the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.'"  *Id.* (quoting *Aponte v. Sec'y of Health and Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  Still, an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record."  *Pena*, 2008 WL 5111317, at *10 (internal quotation marks omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988)).  "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'"  *Id.* (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(a)).  The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations.  *Id.*  First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged.  *Id.* (citing 20 C.F.R. § 404.1529(b)).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the

claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (citing 20 C.F.R. § 404.1529(a)). Among the kinds of evidence that the ALJ must consider (in addition to objective medical evidence) are:

> 1. Daily activities; 2. [t]he location, duration, frequency, and intensity of pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *7–8 (S.S.A. Oct. 25, 2017); *see also Pena*, 2008 WL 5111317, at *11.

## B. Analysis

Navedo argues that this case should be reversed or, in the alternative, remanded, because the ALJ failed to properly evaluate (1) the medical opinion evidence, and (2) her subjective statements.  Pl. Mem. at 12, 22.  Specifically, Navedo contends that the ALJ erred to the extent that he concluded that the opinions from Licensed Clinical Social Worker ("LCSW")-R Judith McAllister, Psychiatric-Mental Health Nurse Practitioner ("PMHNP")-BC Luca Radomile, and Dr. Azariah Eshkenazi were inconsistent and unsupported by the treatment record and Navedo's reported activities of daily living; that the ALJ erred in relying

primarily on the opinion of Dr. Michael Kushner, a one-time examining consultant; and that the opinion from Dr. Kushner does not constitute substantial evidence because he did not review Navedo's medical records.  Pl. Mem. at 12–23.[5]

The Commissioner counters that (1) the ALJ properly weighed the medical opinions, and (2) substantial evidence supported the ALJ's RFC and credibility findings.  Def. Mem. at 14, 23.  Specifically, the Commissioner argues that the ALJ reasonably found that Navedo's reported activities of daily living and the rest of the record undermined the restrictive limitations identified by the treating providers; that the ALJ did not rely primarily on Dr. Kushner's opinion; and that the ALJ was not required to discount Dr. Kushner's opinion merely because it was based solely on an in-person examination rather than a review of Navedo's medical records.  *Id.* at 14–23.

For the following reasons, the Court concludes that (1) the ALJ failed to properly evaluate the medical opinion evidence, and (2) the ALJ's RFC was not supported by substantial evidence.[6]

_____

[5] Navedo refers to Radomile as an "NP" throughout her motion papers; as such, the Court will likewise refer to her as an "NP" in this decision.

[6] Although Navedo also argues that the ALJ failed to properly evaluate her subjective statements, *id.* at 23, the Court does not reach this issue because the case is remanded on other grounds.  Further, because Navedo "does not dispute the ALJ's findings regarding her physical impairments in this appeal," the medical evidence discussed in this opinion focuses only on Navedo's mental impairments. Pl. Mem. at 2 n.5.

**1. The ALJ Failed to Properly Evaluate the Medical Opinion Evidence**

Navedo contends that the ALJ's evaluation of the opinion evidence from LCSW McAllister, NP Radomile, and Dr. Eshkenazi was "erroneous." Pl. Mem. at 15. The Court agrees.

As discussed above, the new SSA regulations require an ALJ to consider a number of factors when evaluating the medical opinion evidence in the record, "most importantly, the 'supportability' and 'consistency' of each submitted opinion." *Velasquez*, 2021 WL 4392986, at *25. An ALJ must "specifically" explain "how well a medical source supports their own opinion(s) and how consistent a medical source/opinion is with the medical evidence as a whole." *Acosta Cuevas*, 2021 WL 363682, at *14. In his decision, the ALJ considered the opinions of four medical sources who opined on Navedo's mental impairments: treating therapist LCSW McAllister, psychiatric consultative examiner Dr. Kushner, psychiatric NP Radomile, and independent medical examiner Dr. Eshkenazi. AR at 16–18. However, he did not properly explain his consideration of a) the supportability or b) the consistency of three of these opinions.

**a. Supportability**

The ALJ erred by not properly considering the supportability of the opinions of LCSW McAllister, NP Radomile, and Dr. Eshkenazi. "[S]upportability, under the new regulations, has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to

22

support her opinion." *Rivera*, 2020 WL 8167136, at *16 (internal quotations and citations omitted).

In his assessment of the opinions of LCSW McAllister, NP Radomile, and Dr. Eshkenazi as "not persuasive" because they were "inconsistent with treatment records and mental status exams," the ALJ failed to consider how the providers' own mental status examinations supported their conclusions.  AR at 18. Specifically, the ALJ did not discuss how the medical providers' questionnaires each "include[d] a question asking the physician to '[i]dentify the positive clinical findings that demonstrate and/or support your diagnosis.'"  *Salerno v. Berryhill*, No. 13-CV-4600 (KMK) (LMS), 2017 WL 3106342, at *12 (S.D.N.Y. June 23, 2017), (ALJ erred by, *inter alia*, discounting observations that substantiated conclusions reached in questionnaire), *adopted by* 2017 WL 3098106 (July 20, 2017).  As in *Salerno*, these sources each "provide[d] responses to that question, citing various clinical findings . . . [and therefore] it is unclear whether the ALJ overlooked these responses or did not find these responses satisfactory."  *Id; see also* AR at 473–74, 556, 571–72 (signs and symptoms recorded in each of these providers' opinions helped to support their conclusions).

LCSW McAllister, for example, identified 19 signs and symptoms in support of her assessment, among them a depressed mood, abnormal affect, hostility or irritability, difficulty thinking or concentrating, poor memory, intrusive recollections of a traumatic experience, deeply ingrained, maladaptive patterns of behavior, social withdrawal or isolation, and sleep disturbances.  AR at 473.

McAllister noted that pervasive anger and irritability, difficulty thinking and concentrating, intrusive recollections of traumatic events, and constant hypervigilance were the most frequent and/or severe.  *Id.* at 474.  In describing the results of a mental status examination, McAllister noted an irritable mood, constricted affect, and verbalization of tactile hallucinations.  *Id.*

NP Radomile's opinion contained similar evidence.  He likewise identified 19 signs and symptoms in support of his assessment, among them depressed mood, abnormal affect, illogical thinking, difficulty thinking or concentrating, poor memory, deeply ingrained, maladaptive patterns of behavior, social withdrawal or isolation, and sleep disturbances.  *Id.* at 571.  NP Radomile concluded that affective symptoms of irritability and depression as well as difficulty concentrating were Navedo's most frequent and/or severe symptoms.  *Id.* at 572.  NP Radomile also noted a blunted and dysphoric mood during the mental status examination.  *Id.*

Finally, the questionnaire Dr. Eshkenazi completed contained supporting evidence that the ALJ did not address.  Dr. Eshkenazi identified nine signs and symptoms in support of his assessment, including depressed mood, abnormal affect, easy distractibility, persistent irrational fears, pervasive loss of interests, intense and unstable interpersonal relationships, and a decreased need for sleep.  *Id.* at 556.

None of this evidence was addressed in the ALJ's discussion of any of these three opinions.  Therefore, the ALJ did not properly consider the supportability of the opinions from LCSW McAllister, NP Radomile, and Dr. Eshkenazi.  *See, e.g.,*

*McIntosh v. Kijakazi*, 20-CV-7354 (OTW), 2022 WL 2384151, at *5 (S.D.N.Y. Jul. 1, 2022) (ALJ failed to address supportability of medical opinion when he did not consider  source's "long and detailed report . . . [and] other 'checked' boxes or other notations"); *Acosta Cuevas*, 2021 WL 363682, at *14 (ALJ failed to properly apply supportability factor where "[n]owhere in [her] decision [did] she explain, as the new regulations require, what the respective [physicians] used to support their opinions and reach their ultimate conclusions").

### b. Consistency

The ALJ also insufficiently analyzed the consistency factor in his evaluation of the medical evidence.  "Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them."  *Acosta Cuevas*, 2021 WL 363682, at *10.  Throughout his decision, the ALJ cited a lack of medical support for the treating providers' opinions with respect to Navedo's inability to work.  However, in doing so, he made two errors: (1) he failed to consider the treating providers' opinions in light of the entire record, including Navedo's self-reported symptoms; and (2) he failed to consider how the opinions were consistent with one another.

With respect to the first consistency error, an ALJ is "expressly authorized – indeed, required – to consider whether [a physician's] opinion [is] consistent with the entire record."  *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *8 (S.D.N.Y. Mar. 21, 2022) (internal quotations omitted).  Consideration

of the entire record entails weighing "all of the evidence available." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  In declaring the treating providers' opinions inconsistent with the record, the only pieces of information to which the ALJ cited by way of explanation were (1) "consistent[ ] indicat[ions]" of "no evidence of thought disorganization," as well as Navedo's repeatedly presenting "with normal memory, concentration, cognition, insight, judgment and behavior" in the Floating Hospital records; and (2) "the claimant's ability to perform activities of daily living, as consistently noted in Floating Hospital records, and inconsistent with Dr. Kushner's normal mental status exam detailed above."  AR at 18–19.

By focusing only on select mental status examination results, the ALJ failed to consider Navedo's self-reported symptoms.  "It is axiomatic that in diagnosing a mental disorder, a treating psychiatrist must consider a patient's subjective complaints.  Indeed, whether a medical provider is dealing with mental or physical impairments, consideration of a patient's report of complaints, or history, as an essential diagnostic tool, is a medically acceptable clinical and laboratory diagnostic technique." *Salerno*, 2017 WL 3106342, at *11 (cleaned up).  Here, symptoms specifically described in the opinions of LCSW McAllister, NP Radomile, and Dr. Eshkenazi are also reflected in the longitudinal treatment records of Floating Hospital, among them depression (AR at 304, 321, 336, 500, 511, and 537), anxiety (*id.* at 304, 307, 321–22, 336–37, 350–51, 367, 369–70, 532, and 538), difficulty thinking or concentrating (*id.* at 336, 350, 366, 369, 532, and 545), social withdrawal or isolation (*id.* at 322, 337, 351, 367, 370, and 501), and disturbed sleep

(*id.* at 304, 307, 321, 369, 532, and 545).  Because he omitted Navedo's self-reported

symptoms from his discussion, the ALJ did not consider the entire record and thus

conducted an insufficient consistency analysis.[7]

Second, the ALJ failed to consider how consistent the opinions were with one

another.  "[A]n ALJ's failure to consider the consistency of the physicians' opinions

with each other . . . constitutes legal error."  *Williams v. Saul*, No. 19-CV-10443

(AT) (JLC), 2020 WL 6385821, at *13 (S.D.N.Y. Oct. 30, 2020); *see also* 20 C.F.R.

§§ 404.1520c(c)(2) and 416.920c(c)(2).  Here, the ALJ did not comply with this

obligation.  Two treating physicians and one consultative examiner concluded that

Navedo's ailments would impact her ability to work: (1) in 2018, LCSW McAllister

concluded that, given the severity of Navedo's symptoms, she should receive "any

---

[7] Further, the cases on which the Commissioner relies for the proposition that the
ALJ reasonably found the questionnaires to be inconsistent with mental status
examination findings are inapposite.  *See* Def. Mem. at 19.  The Second Circuit has
explained that an ALJ can properly reject a physician's opinion as to a claimant's
subjective complaints when it conflicts with documented mental status examination
findings.  *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30–31 (2d Cir.
2018).  In *Smith*, however, the ALJ's decision was predicated on the facts that: 1)
the physician's treatment records did not contain objective evidence of
abnormalities to support the limitation opined; 2) the physician saw claimant "only
four times"; and 3) the opinion was "inconsistent" with substantial evidence in the
record.  *Id.*  Contrariwise, the record in this case demonstrates: 1) objective evidence
of psychiatric abnormalities to support the limitations at issue (as described above);
2) that Navedo had extensive treating relationships with two of the relevant
providers, as she saw LCSW McAllister weekly and NP Radomile monthly since
2015 (AR at 472, 570); and 3) Navedo had a history of mental health issues dating
back to when she was only eight years old (*id.* at 369).  Therefore, *Smith* is not
applicable to the facts of this case.  *See also Daniel R. v. Comm'r of Soc. Sec.*, No. 18-
CV-1305 (ATB), 2020 WL 1270408, at *9 n.5 (N.D.N.Y. Mar. 16, 2020)
(distinguishing *Smith* on grounds that plaintiff's symptoms were "were well
documented since he was a young child" and treating physician had "extensive
treatment relationship" with plaintiff).

and all accommodations until such time that she demonstrates increased stability and improved functioning"; and in 2019 she further opined that Navedo would likely be absent from any employment more than three times per month; (2) also in 2019, NP Radomile opined that Navedo would likely be absent from any employment more than three times per month; and (3) that same month, Dr. Eshkenazi opined that Navedo was not able to be gainfully employed, and further opined that she would likely be absent from any employment more than three times per month. AR at 266, 476, 574, 562, 559. Nowhere did the ALJ refer to the fact that these three examining medical sources each concluded, based on independent treatment and/or in-person examination of Navedo, that she would be unable to work or would be absent more than three times per month.[8]

Remand is appropriate when an ALJ fails to apply the correct legal standard, including adequate consideration and application of the new regulatory factors. *See, e.g., Acosta Cuevas*, 2021 WL 363682, at *9 ("just as under the previous regulations when failure to fully consider the *Burgess* factors . . . would be grounds for remanding an ALJ's decision, an ALJ's failure to adequately consider and apply the new regulatory factors also require a reviewing court to remand"). Because the ALJ improperly assessed the medical evidence by not specifically addressing the

---

[8] While the Commissioner correctly notes differences among the degrees of limitation identified by each provider, Def. Mem. at 19 n.2, the ALJ nonetheless failed to consider the consistency of their conclusions with respect to how often Navedo was likely to be absent from work.

supportability and consistency factors of three medical providers' opinions, the case

must be remanded for further proceedings.[9]

### 2. The ALJ's RFC Determination Was Not Supported by Substantial Evidence

In addition to the deficiencies in the ALJ's evaluation of the medical opinion

evidence, the ALJ's RFC determination was not supported by substantial evidence,

but only by the ALJ's own interpretation of the treatment records and mental

status examinations in this case.  An ALJ commits legal error when he "fill[s] th[e]

evidentiary void with his own medical judgment and interpretation of [the medical]

records." *Lee v. Saul*, No. 19-CV-9451 (CS) (JCM), 2020 WL 5362619, at *17

(S.D.N.Y. Sept. 8, 2020) (collecting cases); *see also Dean C. v. Comm'r of Soc. Sec.*,

No. 19-CV-1165 (DB), 2021 WL 1558401, at *8 (W.D.N.Y. Apr. 21, 2021) (ALJ not

permitted to use own lay interpretation of record to develop claimant's physical

RFC); *McGrath v. Comm'r of Soc. Sec.*, No. 20-CV-3042 (FB), 2021 WL 5281317, at

*2 (E.D.N.Y. Nov. 12, 2021) ("Because the ALJ is a layperson, not a doctor, she is

not permitted to interpret raw medical information into a determination about [the

claimant's] medical condition without the assistance of a medical professional's

insight.").

Here, the ALJ improperly substituted his own judgment for that of Navedo's

medical providers when he relied in part on an understanding that "the claimant's

---

[9] Navedo also contends that the ALJ failed to meaningfully consider the other factors under the new regulations.  Pl. Mem. at 21.  However, the ALJ would only have needed to consider these factors had he "found two or more medical opinions to be equally supported and consistent with the record," which is not the case here. *Velasquez*, 2021 WL 4392986, at *20.

overall presentation [in the Floating Hospital treatment records] was generally normal," without citing to any treating providers who referred to the findings as "generally normal."  AR at 16.  Instead, the ALJ concluded that findings were "normal" based only on his own review of some mental status examinations that he described as "consistently not[ing] goal directed and logical thought processes, intact memory, attention, concentration, and cognitive functions, and good insight, fair judgment, and preserved impulse control."  *Id.*; *see, e.g., McGrath*, 2021 WL 5281317, at *2 (ALJ substituted own opinion of raw medical evidence for that of the physician when she stated "findings were normal and [the] consultative examination also showed full motor strength and normal physical functioning . . . [and therefore] claimant did not have medical restrictions" without identifying medical opinion supporting her conclusion).

The ALJ's reliance on his own understanding that Navedo's behavior was "normal" during mental status examinations is particularly unwarranted because multiple sources reported <u>abnormal</u> examination results.  *See Molina v. Saul*, No. 18-CV-4990 (DF), 2019 WL 5287943, at *31–32 (S.D.N.Y. Sept. 28, 2019) (ALJ's characterization of mental status examinations as "largely normal" neither fair nor accurate when downplays other "abnormal" findings including overloud and rapid speech, an anxious mood, and only fair judgment); *cf. Cintron v. Comm'r of Soc. Sec.*, No. 17-CV-6017 (MAT), 2018 WL 507156, at *5 (W.D.N.Y. Jan. 23, 2018) ("[g]reat care should be exercised in making assumptions about the inability to sustain attention or pace under the stress of competitive employment for a normal

workday or workweek based on short term mental status or psychological testing by a clinician.") (internal quotations and citation omitted).

Notably, every examining provider who assessed Navedo's mental impairments documented one or more abnormal symptoms. *See, e.g.*, AR at 314 (mental status exam from NP Kantoff noting "slightly withdrawn and anxious" behavior, "slight agitation," "rapid, intense," and "loud" speech, a "dysthymic" and "constricted" affect, and "fair" judgment); 467–68 (mental status exam from Dr. Kushner noting "somewhat impaired" attention and concentration, "somewhat impaired" recent and remote memory skills, and "fair" insight); 474 (mental status exam from LCSW McAllister documenting an "irritable" mood, a "constricted" affect, and verbalization of "tactile hallucinations"); 512 (mental status exam from NP Radomile documenting a "dysthymic" mood, a "constricted" affect, and "fair" insight and judgment); 543 (mental status exam from NP Dania showing a "depressed" mood, a "constricted" affect, and "fair" judgment); 561 (mental status exam from Dr. Eshkenazi describing a depressed appearance, crying, a "somewhat labile" affect, and a depressed mood). The ALJ, however, relied heavily on what he considered to be otherwise normal results instead. *Id.* at 17 ("[A]lthough updated records from Floating Hospital continued to indicate sad and constricted affect and complaints of depression, mental status exam findings continued to reveal no evidence of thought disorganization, normal memory, concentration, cognition, insight, judgment, and behavior."). Because the ALJ "was not entitled to conclude that the examinations were 'largely normal,' while disregarding or glossing over

these problematic findings without explanation," his reliance on "normal" results to substantiate his RFC determination was error.  *Molina*, 2019 WL 5287943, at *32.

In reaching his RFC determination, the ALJ also failed to cite to any evidence in the Floating Hospital treatment records that opined on Navedo's functional limitations.  Instead, he relied on the opinion of Consultative Examiner ("CE") Dr. Kushner.  AR at 17, 19.  While the Commissioner is correct that an ALJ can rely on the opinion of a CE to determine an RFC, *see, e.g.*, *Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 576–77 (S.D.N.Y. 2018) ("[I]t is well-settled that a consulting psychiatric examiner's opinion may be given great weight and may constitute substantial evidence to support a decision"), here, the CE's opinion alone does not fully substantiate the stated RFC.  Although the ALJ acknowledged that Dr. Kushner opined that Navedo had "mild to moderate limitation" in her interactions with the public and co-workers, AR at 17 (*referring to id.* at 468), the RFC determination provides for "occasional interaction with coworkers" but "no interaction with the public" without any explanation for the difference in the two functional capacities.  *Id.* at 15.  The existence of substantial evidence to support an RFC determination must be shown through evidence of what the claimant can do that meets the RFC asserted.  *See, e.g., Rosa v. Callahan*, 168 F.3d 72, at 80–82 (2d Cir. 1999).  Without any explanation as to the functional capacity for interaction with the public and coworkers, the ALJ appears to have made this determination "in the absence of supporting expert medical opinion," and therefore he has "improperly substituted his own opinion for that of a physician, and has committed

legal error." *Vellone on behalf of Vellone v. Saul*, No. 20-CV-261 (RA), 2021 WL

2801138, at *2 (S.D.N.Y. Jul. 6, 2021) (quoting *Donofrio v. Saul*, No. 18-CV-9968

(ER), 2020 WL 1487302, at *8 (S.D.N.Y. Mar. 27, 2020)).

Moreover, the ALJ's finding that Dr. Kushner's opinion was persuasive in

part because it was consistent with the RFC "reflects a misunderstanding of the

required analysis at this step." *Johnson v. Colvin*, No. 14-CV-2334 (CM) (JLC),

2015 WL 400623, at *15 (S.D.N.Y. Jan. 30, 2015), *adopted by* 2015 WL 3972378

(June 1, 2015); *see* AR at 17 (Dr. Kushner's opinion is "generally consistent with . . .

the RFC").  "Courts have observed that using what has become SSA boilerplate

language essentially reverse[s] the standard by finding that [a claimant] was not

credible because [the claimant's] complaints were not compatible with [the ALJ's]

own RFC determination, as opposed to the objective record evidence." *Johnson*,

2015 WL 400623 at *15 (cleaned up).  Here, the ALJ similarly reversed the

standard when he concluded that Dr. Kushner's opinion was persuasive in part

because it was compatible with his own RFC determination.

### 3.  The ALJ's Errors Were Not Harmless

Finally, the ALJ's failure to properly evaluate the medical evidence was not

harmless for two reasons.  First, had the ALJ accorded greater weight to the

opinions of LCSW McAllister, NP Radomile, and Dr. Eshkenazi, he may have found

Navedo's impairments met the paragraph B criteria for a finding of mental

disability.  To satisfy the paragraph B criteria, a claimant must demonstrate that

"her mental disorder result[s] in 'extreme' limitation of one, or 'marked' limitation of

two, of the same four broad functional areas [namely, the claimant's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt and manage themselves]." *DuBois*, 2022 WL 845751, at *2 n.1 (citing 20 C.F.R. § 404.1520a(c)(2)).

Here, there is a "colorable case that [Navedo] meets at least two of the paragraph B criteria, although [the ALJ] found otherwise in step two of his analysis." *Villarreal v. Colvin*, No. 13-CV-6253 (LGS), 2015 WL 6759503, at *26 n.91 (S.D.N.Y. Nov. 5, 2015).  LCSW McAllister opined that Navedo had marked limitations in two of the four areas of mental functioning: understanding and memory and adaptation.  AR at 475.  NP Radomile opined that Navedo had moderate-to-marked limitations in all four areas of mental functioning: understanding and memory, concentration and persistence, social interactions, and adaptation.  *Id.* at 573.  Dr. Eshkenazi opined that Navedo had moderate-to-marked limitations in understanding and memory, concentration and persistence, and social interactions, and a marked limitation in understanding and memory.  *Id.* at 558. Had the ALJ considered these opinions to be persuasive, he may have found that Navedo had at least two marked limitations in two of the functional areas.  If so, he would have determined that Navedo suffered from impairments which would satisfy the "paragraph B" criteria at step three of his analysis and found her to be disabled.

Second, LCSW McAllister, NP Radomile, and Dr. Eshkenazi each opined that Navedo would likely be absent from work at least three times a month.  *Id.* at 476, 574, 559.  Even though Navedo's ability to work is a determination reserved for

the Commissioner, these opinions are particularly significant in light of the VE's testimony that three or more absences a month would rule out all competitive employment. *Id.* at 61–62.  Had the ALJ credited any of the three opinions as persuasive, he may have found that there were no jobs in the national economy that Navedo could perform.  Accordingly, the ALJ's failure to properly evaluate the medical opinion evidence on this point was not harmless.  *See Pines v. Comm'r of Soc. Sec.*, No. 13-CV-6850 (AJN) (FM), 2015 WL 872105, at *10 (S.D.N.Y. Mar. 2, 2015) (internal quotation marks and citation omitted) (ALJ's analysis of treating physician's opinion was not harmless error because VE "essentially testified that if these opinions were adopted, [the claimant] would be unable to work"), *adopted by* 2015 WL 1381524 (Mar. 25, 2015).

### III.    CONCLUSION

For the foregoing reasons, Navedo's motion is granted, the Commissioner's cross-motion is denied, and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Dated: July 25, 2022
         New York, New York

_____
JAMES L. COTT
United States Magistrate Judge